UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSIMILIANO PERRAULT, individually and on behalf of all others similarly situated,<br><br>Plaintiff<br><br>v.<br><br>JRK PROPERTY HOLDINGS, INC.,<br>JRK RESIDENTIAL GROUP, INC.,<br>UTILITY BILLING, INC., and<br>TEWKSBURY APARTMENTS PROPERTY OWNER, LLC,<br><br>Defendants | Civil Action No. 23-10746-FDS |

## ASSENTED-TO MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Pursuant to Fed. R. Civ. P. 23(b)(3), plaintiff Massimiliano Perrault moves with Defendants' assent that this Honorable Court grant final approval of the Class Action Settlement Agreement ("Agreement"), filed with the Court in connection with Plaintiff's previously allowed motion for preliminary approval. The proposed final approval order agreed to by the parties is appended hereto as Exhibit 1.

**I. NATURE OF THE CASE AND PROCEDURAL HISTORY.**

Plaintiff was a tenant of an apartment complex in Tewksbury, Massachusetts, owned and managed by Defendants, known as The Residences at Tewksbury Commons.[1] Plaintiff alleged that

---

[1] This action was commenced by Emily Anderson, a co-tenant of Plaintiff. Due to unforeseen personal circumstances, in December, 2023, Mr. Perrault was substituted for Ms. Anderson as the named plaintiff and putative class representative.

Defendants violated a number of the requirements of G.L. c. 186, § 22, at the Tewksbury property and four other residential apartment complexes in Massachusetts (the "Properties"). Section 22 governs the sub-metering of water and sewer service provided by landlords to residential tenants. Plaintiff further alleged that Defendants' violations of Section 22 also violated G.L. c. 93A, that said violations were knowing or willful in nature, and that Defendants failed to make reasonable and timely written tenders of settlement in response to Plaintiff's pre-suit demands with knowledge or reason to know that their conduct was unlawful.

Class counsel conducted an investigation of the facts and law relative to Plaintiff's claims, prepared and filed a complaint and amended complaints, and conducted extensive discovery including written discovery, document subpoenas to the municipalities that provided water and sewer service to the Properties, and depositions of Defendants. Defendants served written discovery and deposed the Plaintiff. There were several discovery disputes between the parties, some of which the parties were able to resolve and others of which resulted in motion practice.

Following the close of discovery, Plaintiff voluntarily dismissed certain claims and moved for class certification on the remaining claims. Defendants opposed the motion for class certification and moved for summary judgment. In the course of briefing these motions the parties engaged in earnest settlement discussions, which over the course of several months culminated in the Agreement.

On November 5, 2024, this Court granted preliminary approval of the settlement, finding the Agreement's terms to be fair and reasonable to the class, approved the proposed plan for providing notice to absent class members as consistent with due process, and preliminarily certified a settlement class as meeting all the requirements of Fed. R. Civ. P. 23(b)(3).[2] The Court

---

[2] The Class comprises "all persons who were lessees (as tenants or co-tenants) of apartments at any one or more of the Properties at any time from February 2, 2019 through September 6, 2024."

further preliminarily appointed Plaintiff as class representative and Plaintiff's counsel as class counsel.

## II. THE SETTLEMENT CLASS MEETS ALL REQUIREMENTS FOR CERTIFICATION.

### A. This Court has jurisdiction over the claims of all Class Members.

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) and (5). In addition, the Court may exercise personal jurisdiction with respect to the claims of all Class Members. Although all Class Members were Massachusetts residents when they resided at the Properties, it is reasonable to assume that some may have since moved out of Massachusetts. However, the settled claim arises from Class Members' leasing and use of real property located in Massachusetts, hence any out-of-state members are subject to the Court's jurisdiction under the Massachusetts Long Arm Statute. *See* G.L. c. 223A, § 3(e) ("A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's . . . having an interest in, using or possessing real property in this commonwealth . . ."). And such activities constitute "minimum contacts" sufficient to satisfy the requirements of constitutional due process. *See Capello v. Res. Depot, LLC*, 89 F. 4th 238, 244 (1st Cir. 2023).

### B. All criteria of Fed. R. Civ. P. 23(b)(3) are satisfied.

#### 1) The numerosity requirement is satisfied.

Under Fed. R. Civ. P. 23(a), the class must be "so numerous that joinder of all members is impracticable." In practical terms, this means that Plaintiff "need only show that it is difficult or inconvenient to join all the members of the class." *Duhaime v. John Hancock Mutual Life Ins. Co.*, 177 F.R.D. 54, 62 (D. Mass. 1997).

The numerosity requirement is easily met in this case based on verified information produced by Defendants that there are 5,821 Class Members. Declaration of Anthony Gomez, ¶ 8. This number far eclipses the minimum number of persons usually found necessary to satisfy the numerosity requirement. *See*, *Garcia-Rubiera v. Calderon,* 570 F. 3d 443, 460 (1st Cir. 2009) (40 individuals usually sufficient to satisfy numerosity requirement); 3 *Newberg on Class Actions (3rd ed.),* pp. 3-25 (class consisting of 40 members "should meet the [numerosity] test on that fact alone").

### 2) There are common questions of law and fact.

Rule 23(a) requires that there be questions of law or fact common to the class. The commonality requirement "is a 'low hurdle' easily surmounted," thus, it need only be demonstrated "that 'resolution of the common questions affect all or a substantial number of class members.'" *Duhaime*, 177 F.R.D. at 62 - 63 (quotations and citations omitted). Here, all Class Members share a fundamental commonality: all were Massachusetts residents subjected to the identical allegedly unlawful practice of Defendant during their tenancies at the Properties. Commonality therefore exists because the "questions that go to the heart of the elements of the cause of action will each be answered either 'yes' or 'no' for the entire class." *Raposo v. Garelic Farms, LLC,* 292 F. R.D. 51, 55 (D. Mass. 2013).

### 3) Plaintiff's claim is typical of the claims of class members.

The typicality requirement of Rule 23(a) is satisfied "when the plaintiff's injuries arise from the same event, practice or course of conduct of the defendant as do the injuries which form the basis of the class claim." *Adair v. Sorenson,* 134 F.R.D. 13, 17 (D. Mass. 1991). Typicality does not require that Plaintiff's claims and those of class members be identical; rather, typicality exists when the nature of the claim indicates that in litigating it the plaintiff can reasonably be

expected to also advance the interests of absent class members. *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 156-157 (1982). In the present case, Plaintiff's claims "arise from the same course of conduct that gave rise to the claims of the absent [class] members. . . [therefore] the typicality requirement is satisfied." *Burstein v. Applied Extrusion Technologies, Inc.*, 153 F.R.D. 488, 491 (D. Mass. 1994).

> **4) <u>Plaintiff has fairly and adequately protected the interests of the class.</u>**

Rule 23(a) requires that Plaintiff "adequately and fairly" represent the class. This entails consideration of two factors: (1) whether any potential conflicts exist between Plaintiff and the putative class; and (2) whether Plaintiff and her counsel will prosecute the case vigorously. *See Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985); 3 *Newburg on Class Actions 3d,* § 3.22. Since Plaintiff's claim and those of all Class Members arise from the same allegedly unlawful conduct by Defendants, there are no actual or potential conflicts between Plaintiff and other class members.

In addition, Plaintiff has shown himself to be an adequate class representative, retaining counsel experienced in consumer and landlord/tenant class action litigation, actively participating in discovery, strategy discussions, and settlement negotiations, and reviewing and approving the Agreement.

Class Counsel submitted declarations in support of preliminary approval and in support of their motion for counsel fees (filed herewith) reflecting their substantial experience in consumer rights and landlord/tenant litigation, including class actions. Counsel vigorously prosecuted Plaintiff's claims, entered into arms-length, good-faith settlement negotiations, and obtained a settlement that is fair and reasonable to the Class. They have amply demonstrated their fitness to serve as class counsel.

### 5) **Common issues of fact and law predominate.**

Under Fed. R. Civ. P. 23(b)(3), a case may be certified as a class action if the four elements of Rule 23(a) are met, and in addition "the Court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members."

The predominance requirement, while "far more demanding" than the commonality requirement of Rule 23(a), "does not require the plaintiff to show that each element of its claim is susceptible to class-wide proof." *Painters & Allied Trades Dist. Council 82 Health Care Fund v. Forest Labs., Inc.,* 315 F.R.D. 116, 123 (D. Mass. 2016), quoting *In re Nexium Antitrust Litig.,* 777 f. 3d 9, 21 (1st Cir. 2015). Rather, "[t]he plaintiff need only prove that individualized questions will not overwhelm the common ones so as to render class certification inappropriate." *Id.* (citation and internal quotations omitted). Thus, the predominance requirement is "readily met" in consumer cases involving a uniform business practice. *Duhaime*, 177 F.R.D. at 64. Here, the common questions clearly predominate over any individual issues; indeed, the only individual issue is the specific relief to which each Class Member may be entitled, but this has been determined administratively through application of a uniform formula and, in any event, would not undermine the suitability of the Class for certification. *See Smilow v. Southwestern Bell Mobile Sys.,* 323 F. 3d 32, 40 (1st Cir. 2003) ("courts generally find the predominance requirement to be satisfied even if individual damages issues remain").

### 6) **A class action is superior to other methods for resolving the controversy.**

Rule 23(b)(3) also requires that a class action be "superior to other methods for fairly and efficiently adjudicating the controversy." As has been noted, "[t]he superiority inquiry is closely related to the predominance inquiry." *Oudani v. Dynamex Operations East, LLC,* 405 F. Supp. 3d 149, 167 (D. Mass. 2019). This directs the Court to consider "the class members interests in

controlling [the litigation]," the "desirability or undesirability of concentrating the litigation" in this forum, the "likely difficulties in managing a class action," and "the pendency of any related litigation." *George v. Nat'l Water Main Cleaning Co.,* 286 F.R.D. 168, 183 (D. Mass. 2012). *See Fulco v. Continental Cablevision, Inc.,* 1990 U.S. Dist. LEXIS 11392, at *11 (D. Mass. June 19, 1990) ("judicial economy and efficiency are paramount in determining whether a class action is superior [to individual litigation or other means of resolving dispute]"); As to manageability, the issue is "not . . . whether this class action will create significant management problems, but instead . . . whether it will create relatively more management problems than any of the alternatives." *George,* 286 F.R.D. at 183 ("a class action here would be a better option than multiple individual actions, coordinated individual actions, consolidated individual actions, test cases, or any of the other options of which the Court is aware").

All the relevant factors favor certification because: (i) it will conserve judicial and litigant resources; (ii) it will provide access to the courts for many class members who, because their claims have relatively low value, would not otherwise be likely to seek relief; (iii) it will eliminate the possibility of conflicting rulings arising from multiple lawsuits; and (iv) there is no other method with the potential to resolve the controversy with anywhere close to the efficiency, uniformity, and finality that can be achieved through a certified class action. *See Oudani,* 405 F. Supp. 3d at 167 ("efficiency . . . and policy considerations . . . make class adjudication superior"). Furthermore, the administration of the settlement to date indicates that there are no unusual or extraordinary management difficulties that will hinder finalizing the settlement.

**7) <u>Class members have been ascertained.</u>**

Although not specified in Rule 23, the First Circuit has added an ascertainability element to the class certification analysis, which is satisfied if the class definition employs "objective

criteria" for identifying class members. *Id.* at 167, quoting *Matamoros v. Starbucks Corp.,* 699 F. 3d 129, 139 (1st Cir. 2012). The class definition here meets this standard, as all members have been identified from Defendants' records. Gomez Declaration, ¶ 8.

### III. THE PROPOSED SETTLEMENT IS FAIR AND REASONABLE AND SHOULD BE GIVEN FINAL APPROVAL.

#### A. Summary of settlement terms.

The settlement is of Plaintiff's claims that Defendants violated G.L. c. 186, § 22(h) and G.L. c. 93A by failing to read Class Members' water submeters on the commencement dates of their tenancies and by failing to mail these readings to tenants on said dates, as a result of which the first sub-metered bills to Class Members were unlawfully issued. Defendants have not admitted any liability for these claims. The full settlement terms are set forth in the Agreement filed with the Court on November 5, 2024 (Doc. 69).

The settlement provides for monetary and injunctive relief. With respect to monetary relief, following final approval Defendant will establish a Settlement Fund in the amount of $300,000 (three hundred thousand dollars). After payment of fees and costs of Class Counsel (maximum of 30% of the Settlement Fund), any service awards to the Plaintiff and Plaintiff's predecessor (maximum of $5,000 each), and Plaintiff's share of administrative costs,[3] all remaining funds will be distributed to Class Members. Class members who paid $25.00 or less (but at least $0.01) for their first sub-meter bill will receive $25.00 as statutory damages under G.L. c. 93A. Class members who paid more than $25.00 for their first sub-meter bill will receive, as actual damages under G.L. c. 93A, the amounts they paid.[4] No action need be taken by any Class Member in order

---

[3] Defendants are contributing $5,000 to the costs of class notice and administration.

[4] In the event amounts allocated to these Class Members do not exhaust the settlement fund, the total amounts distributed to them will be increased on a *pro rata* basis, the goal being to fully exhaust the Settlement Fund.

to receive a payment from the Settlement Fund. Payments that are returned to the Administrator as undeliverable or that are not negotiated by Class Members in a timely fashion according to the terms of the Agreement will be redistributed to Class Members to whom actual damages payments were effectively made, also on a *pro rata* basis. Any monies remaining in the Settlement Fund following the distribution and re-distribution of payments will revert to Defendants.

Regarding injunctive relief, Defendants warranted and represented in the Agreement that they have already revised their business practice to ensure that on the commencement date of each new tenancy the apartment submeter is read and the reading delivered to the tenant. Defendants further agreed to maintain this practice at all of the Massachusetts apartment properties encompassed by the Agreement, barring any change in Massachusetts law with respect to said requirement.

### B. The settlement is fair and reasonable.

There is a "clear policy in favor of encouraging settlements" in class action litigation. *Durrett v. Housing Auth. of City of Providence,* 896 F. 2d 600, 604 (1st Cir. 1990). The Court should evaluate a proposed class action settlement in its entirety, and a settlement that is fair, reasonable, and adequate should be approved. *See* H. Newberg, A. Conte, *Newberg on Class Actions* (5th ed. 2015), ¶ 13. There is a presumption in favor of reasonableness where the settlement resulted from "arm's length negotiations conducted by experienced counsel," which is what occurred here. *Meaden v. Harborone Bank,* 2023 U.S. Dist. LEXIS 87154 at * 10 (D. Mass. May 18, 2023). *See In re Pharm. Indus. Average Wholesale Price Litig.,* 588 F. 3d 24, 32 – 33 (1st Cir. 2009) (settlement reasonable "[i]f the parties negotiated at arm's length and conducted sufficient discovery"). In moving for preliminary approval Plaintiff's counsel submitted affidavits to the Court attesting to their experience in litigating consumer and tenant class actions and their abilities

to evaluate the proposed Agreement on behalf of the Class.

In evaluating a proposed settlement, the Court weighs both "procedural and substantive factors." *Preston v. World Travel Holdings, Inc.,* 2024 U.S. Dist. LEXIS 123879, at *8 (D. Mass. July 15, 2024). The procedural factors are "whether the class representatives and class counsel have adequately represented the class and the proposal was negotiated at arm's length;" the substantive factors are "whether the relief provided for the class is adequate and the proposal treats class members equitably relative to each other." *Id.,* at 8 – 9 (citations and internal quotations omitted). Whether the relief is adequate is assessed "[by] balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proposed settlement." *Id.,* at 10 – 11, quoting *Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund,* 582 F. 3d 30, 44 (1st Cir. 2009).

Here, the settlement is *prima facie* reasonable because the monetary relief to be provided to Class Members is the maximum that could be recovered by litigating the Claim through trial (absent a finding that Class Members whose initial bill exceeded $25.00 would be entitled to an award of multiple damages under G.L. c. 93A and that such multiple awards would exceed amounts provided under the Agreement). Moreover, the settlement was reached through arms-length negotiations between the parties, and the proposed amounts of legal fees, costs, and service awards were negotiated separately from other settlement terms and are reasonable in view of the efforts expended by Counsel and Plaintiff in litigating the action and negotiating the Agreement. Accordingly, when factoring in the delay and expense of continued litigation, including likely appeals, along with the uncertainty of obtaining a multiple damage award, the proposed settlement is fair, reasonable, and appropriate.

### C. The reaction of the Class confirms that the settlement is fair and reasonable.

As recognized, "[t]he number of requests for exclusion from the settlement, as well as the number and substance of objections filed, is relevant to this Court's analysis of the settlement." *Bussie v. Allmerica Fin. Corp.,* 50 F. Supp. 2d 59, 77 (D. Mass. 1999). Thus, a small percentage of objections and opt-out requests constitutes strong evidence of fairness and supports judicial approval of a settlement. *Id.* Here, from a class exceeding 5,800 members there were no objections and only two requests for exclusion. Gomez Declaration, ¶¶ 16, 17; Declaration of Kenneth D. Quat, ¶¶ 3, 4. This *de minimis* number confirms that the settlement is fair and reasonable and deserving of final approval.

## IV. THE CLASS NOTICE PLAN WAS ADEQUATE, WAS IMPLEMENTED IN ACCORDANCE WITH THE AGREEMENT, AND WAS EFFECTIVE.

The Court previously approved the form, substance, and methods of delivery of the notices used to inform Class Members of the pendency of this class action, of the settlement terms, and of their rights with respect to the settlement. As set forth in the declaration submitted by Anthony Gomez, Optime Administration, LLC – the settlement administrator - provided email and mailed written notice to Class Members as called for in the Agreement, and established the settlement website called for by the Agreement. Optime's efforts included updating mailing addresses for all Class Members for whom email addresses were not available, further updating mailing addresses for those class members whose postcard notices were returned as undeliverable and re-mailing them, and sending postcard notices via regular mail to all Class Members whose email notices "bounced back" to Optime. Declaration of Anthony Gomez, ¶¶ 6 - 13. As a result of Optime's efforts, 91.5% of the Class presumptively received direct, individual notice of the proposed settlement. Gomez Declaration, ¶¶ 11 - 14. This is more than adequate to satisfy the standard of providing effective notice: "the lynchpin in an objective determination of the adequacy of a

11

proposed notice effort is whether all the notice efforts together will reach a high percentage of the class. It is reasonable to reach between 70–95%." Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide 3* (2010) (available at https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf.

## V. <u>CONCLUSION</u>

For the above reasons, Plaintiff respectfully requests that the Court allow the instant motion and issue the proposed order granting final approval of the settlement.

Respectfully submitted:

**MASSIMILIANO PERRAULT, Plaintiff**
By his attorneys:

*/s/Kenneth D. Quat*
BBO #408640
QUAT LAW OFFICES
373 Winch Street
Framingham MA 01701
508-872-121
kquat@quatlaw.com

*/s/John R. Yasi*
BBO #556904
Yasi & Yasi, P.C.
2 Salem Green
Salem MA 01870
617-741-0400
john.yasi@yasiandyasi.com

**Certificate of Service**

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent via first class mail, postage prepaid, to those indicated as non-registered participants.

*/s/Kenneth D. Quat*

Dated: March 21, 2025